Mrs. J. A. GREGORY et al., Appellants,

v.

ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, Appellee.

No. 7517.

Court of Civil Appeals of Texas.

Texarkana.

March 31, 1964.

Rehearing Denied April 28, 1964.

Jones, Brian, Jones & Baldwin, Marshall, Howard S. Smith, Sulphur Springs, for appellants.

O. O. Touchstone, Dallas, Joe N. Chapman & Ray Johnson, Sulphur Springs, for appellee.

FANNING, Justice.

This is a suit for damages as the result of a crossing collision between appellee's train and an automobile driven by Thomas Ray (Butch) Gregory in which accident he was killed, his father J. A. Gregory was killed, infant Douglas McCord, the grandson of J. A. Gregory was killed, and infant Mark Gregory, about 2½ years of age and the grandson of J. A. Gregory, survived the accident but received very serious personal injuries. The crossing was at a dirt road and the railroad tracks of appellee railroad about 3 miles west of Sulphur Springs in Hopkins County, Texas. The dirt road in question led from the home of J. A. Gregory, which home was north of the railroad crossing and led south from the crossing to the highway between Sulphur Springs and Commerce. Trial was to a jury upon special issues resulting in a verdict upon which the trial court entered judgment in favor of appellee railroad. Plaintiffs-appellants' amended motion for new trial was overruled. The trial court heard evidence relating to jury misconduct and made findings of fact and conclusions of law thereon, finding in essence that jury misconduct was shown (as hereinafter more particularly related) but concluded that the misconduct was not material and that it did not probably result in any injury to plaintiffs or in the return of an improper verdict. Appellants have appealed and their appeal principally centers around jury misconduct and the injection of a "no insurance" matter by appellee's counsel. Other contentions are also made as hereinafter related.

Plaintiffs-appellants in their pleadings after describing the collision in question, and alleging failure of appellee railroad company and its train crew to ring the bell and sound the horn, failure to keep a proper lookout and the operation of its train at an excessive speed, in addition thereto also specifically set out in considerable detail the maintenance by defendant-appellee of a dangerous and extra-hazardous crossing essentially because of the fact that said crossing would drag or hang automobiles as they attempted to negotiate the crossing.

As above related, all of the occupants in the automobile, except the infant Mark Gregory, were killed. The infant Mark Gregory, who received severe injuries, was 2½ years old at the time of the accident, and was of course too young to testify at the trial. Plaintiffs-appellants presented some witnesses whose testimony would raise an issue of fact on whether the whistle was blown or the bell was rung. However, the train crew of appellee's train (Engineer Shirey, Fireman Philpot, both in the locomotive engine, and Brakeman Patton and Conductor Simpson, riding in the caboose) testified very strongly on the blowing of the whistle and the ringing of the bell, including short emergency blasts just before the collision in question.

Fireman Philpot, a living eyewitness of the collision, testified that the automobile in question "stopped seven to nine feet from the nearest rail", coming to a "complete stop and then starting up", that he watched the car come up on the rail and that "he was up there and stopped, I would say, seconds before we ever hit him, but he was completely stopped on the rails", and that the engine then hit the car "pretty much broadsided". Mr. Philpot further testified:

" 'Q. Now when he got up on that track, if his car hadn't stopped, would he have had time to get across?

" 'A. Had plenty of time.

" 'Q. But when his car stopped up there for some reason, you don't know the reason?

" 'A. I don't know the reason.

" 'Q. It never moved?

" 'A. (Witness shakes head).

" 'Q. Did you see him making any effort to start his car and get off the track?

" 'A. Sure didn't.

" 'Q. But he had plenty of time?

" 'A. He had plenty of time.

" 'Q. If his car was in good condition?

" 'A. Right.' "

\* \* \* \* \* \*

" 'Q. Really, then he would have cleared the track if something hadn't happened to cause that car to stop on that track, that was your testimony?

" 'A. That's right.' "

\* \* \* \* \* \*

" 'Q. You don't know what caused it to happen?

" 'A. Sir?

" 'Q. Do you know anything about what caused it to happen to the car?

" 'A. I don't know.' "

Engineer Shirey was also a living eye-witness of the collision. We quote from his testimony in part as follows:

" 'Q. If I understand you, sir, at the time when you were about 150 feet from the crossing, you first saw the car?

" 'A. Yes, sir.

" 'Q. At that time it was literally astride your rails of your railroad track?

" 'A. Yes, sir.

" 'Q. Isn't it true that unless something occurred to keep that car where it was or to turn it around, isn't it true that if the car had moved on off the track that it would have had plenty of time to clear before your train struck it?

" 'A. Yes, sir, I believe it would.

" 'Q. So really the sole and only cause for the collision, the collision itself, the sole and only cause was the fact some reason, unknown to you, this car did not move off the track?

" 'A. Right.' "

It is appellants' view that the lawsuit centered primarily around the cause for the car's stoppage on the track in front of the locomotive when it had plenty of time to cross ahead of the train and that the condition of the crossing (whether extra-hazardous or not) became the central issue in the case. While there were many other issues in the case we are inclined to agree with appellants' view in the above respects. We have examined the lengthy statement of facts and find that a very large portion of it, if not the major portion of it, dealt with evidence as to the condition of the crossing. Plaintiffs produced a large number of witnesses who testified as to various defects and adverse conditions at defendant's crossing. Among the defects and adverse conditions were briefly in essence the following: The crossing was very rough, there was not enough ballast on the tracks, the rails were an obstacle to go over, that the cross-ties between the rails were not properly covered by ballast, that some of the witnesses testified to actually getting "hung" on the crossing, some were "hung" one time, others two or three times, and another witness, four times. Other witnesses who did not get "hung" on the rail testified to "scraping the rail" and some testified as to their motors becoming "stalled" on the rough crossing. In short, if plaintiffs' witnesses had been fully believed, the jury would have had very strong and ample testimony to support a finding that the crossing was an extra-hazardous one, as defined by the trial court in his charge. Likewise, the defendant railroad company produced a number of witnesses who testified to countering testimony to the effect that the crossing was not unusually rough, that proper ballast was between the rails, that they had not "hung" on the rails or had the trouble related by plaintiffs' witnesses in negotiating the crossing, and in short defendant-appellee produced evidence from

a number of witnesses countering the evidence produced by plaintiffs' witnesses with respect to whether the crossing was extra-hazardous or not. There was also a dispute as to whether the railroad company or someone else placed gravel or rock ballast upon the crossing shortly after the collision.

Strenuously contested was the matter of whether the cause of the Gregory's car stoppage on the tracks was the result of an extra-hazardous crossing or for some other reason. Defendant by cross-examination questioning of some of plaintiffs' witnesses sought to bring out evidence to the effect that there was a defective carburetor in the Thomas Ray Gregory car and in effect inquired about whether Thomas Ray Gregory "had been pushed off the street in Sulphur Springs" while he was having trouble with the car. However, no evidence of probative force was ever produced from the witness stand by any witness showing that Thomas Ray Gregory was having carburetor trouble shortly prior to the collision in question and there was no evidence produced from the witness stand by any witness that Thomas Ray Gregory's car was defective in any way at the time of the collision.

The jury findings were in essence in the main as follows: (1) the railroad failed to maintain the crossing in question in such condition as to admit of free and easy vehicle passage but (2) this did not make the crossing extra-hazardous; (6, 7, 8, & 9) the occupants of the Butch Gregory car were in a discovered position of peril from which the train operatives realized they might not or could not extricate themselves, but that the discovery was not made in time by the train operatives; (13) that there was a failure to sound the horn and (16) ring the bell, (14 and 17) each of which was negligence but (15 and 18) neither of which was a proximate cause of the collision. Both the train operatives and Butch Gregory were absolved of the failure to keep a proper lookout. (Issues 19 and 22). The jury further found to the effect that Butch Gregory did not fail to keep his automobile under proper control.

(Issue 24). The collision was found not to be unavoidable. (Issue 54). The jury also found that the crossing in question was a private crossing (Issue 29).

While the jury found to the effect that Butch Gregory had his automobile under proper control as it approached the tracks (Issue 24) and that while his failure to yield the right-of-way to the train was negligence that it was not a proximate cause of the collision (Issues 26, 27 and 28), and it was also further found by the jury to the effect that Gregory stopped the automobile within less than 15 feet of the tracks when the train was within 1500 feet of the crossing and was an immediate hazard and plainly visible (Issues 30–34), but that such stopping was not a proximate cause. (Issue 35).

The jury further found to the effect that Butch Gregory did not stop the automobile on the tracks, (Issue 38), did not permit the automobile to stall on the crossing (Issue 41), and that while he did fail to drive the car forward from its position on the tracks at the time of collision, this was not negligence. (Issues 44 and 44–A).

The jury further found to the effect that the failure of Butch Gregory to heed the air horn (Issues 46 and 47) and the bell (Issues 50 and 51) was both negligence and a proximate cause, each being sounded prior to the collision (Issues 48, 49, 52 and 53), and that there was no joint enterprise between Butch and his father (Issue 61). The damage issues were also answered. (Issues 56–60).

Appellants with respect to such jury findings make the following query and argument in their brief:

"QUERY: If Butch neither *stopped* nor *permitted* the automobile to stall on the tracks, *but yet failed to drive it forward* from the tracks when there was plenty of time for him to do so, the real cause of the collision being his failure to leave the tracks (Engineer Shirey and Fireman Philpot, this

brief, pp. 3–5, supra), *then what caused the car to remain on the tracks?* It wasn't the condition of the crossing, said the jury (Issue 2). The car certainly 'stalled or stopped' (Philpot to Loyd, S.F. 243) on the tracks.

"CARBURETOR FAILURE could have caused the car to stop or stall, and would fully explain the jury's findings consistent with the most favorable view of the defendant's evidence. But, there isn't a line of evidence in this record anywhere of any carburetor malfunction in the Butch Gregory car —OR, IS THERE? AND WHERE IS THE 'EVIDENCE'?"

Following this query and argument appellants in their brief contend to the effect that there is no evidence in the record from any witness on the witness stand that Butch Gregory had had any carburetor trouble with his car shortly before the collision but that the juror Bradford injected this matter by relating to the juror Anderson that he had heard that Butch Gregory had had carburetor trouble the day before the collision and further to the effect that the juror Bradford was guilty of gross misconduct in going out and talking to storekeeper Vaughn about matters material to the case during the trial of the cause, having also talked to Vaughn prior to becoming a juror in the case. Appellants attack the misconduct of juror Bradford by the following four points:

" '1. The concealment by juror Bradford of his knowledge of carburetor trouble, his investigations and conduct during the trial, were and are so inimical to standards of fairness of trial that the burden of proof of harm is met, prima facie, by showing the improper acts themselves and nothing more.

" '2. The admitted and trial-court-found misconduct of juror Bradford was both material and probably resulted in injury to these plaintiffs.

" '3. Juror Bradford was a disqualified juror which fact was not discovered until after verdict, and because of which fact a new trial should be granted herein.

" '4. Plaintiffs having unknowingly tried the case with a disqualified juror, they were denied their right of trial by jury, constitutionally guaranteed.' "

The trial court heard evidence with respect to the misconduct of juror Bradford and made findings of fact and conclusions of law. We quote in part from such findings and conclusions in footnote 1 below.[1]

---

1. "5.

\* \* \* \* \*

"A short time following the train-car collision, which occurred on December 21, 1961, Newman Bradford, who was subsequently summoned for jury service after this case was filed, engaged in a conversation with Raymond Vaughn, in which conversation Vaughn made a statement to the effect that Butch Gregory (Thomas Ray Gregory, deceased) had been having trouble with the carburetor on his automobile on the day before the collision occurred.

"6.

"The conversation described above occurred long before this suit was filed on March 16, 1962, and long before Newman Bradford was summoned for jury service.

"7.

"During the course of the trial, and on or about Wednesday, December 12, 1962, juror Carl Anderson rode to his home as a passenger in an automobile driven by juror Bradford after court had adjourned for the day, and upon this occasion jurors Bradford and Anderson were the only occupants in such automobile.

"8

"While jurors Bradford and Anderson were thus traveling enroute to their homes, juror Bradford made a statement to juror Anderson to the effect that he, the said Bradford, had heard that Butch Gregory had been having trouble with the carburetor on his automobile the day before the fatal collision occurred.

"9.

"Except for this one statement made by juror Bradford to juror Anderson, neither the said juror Bradford nor juror Anderson mentioned or discussed the matter of the carburetor trouble with

Additional findings and conclusions of the trial court are quoted in part in footnote 2 below.[2]

any other member of the jury, at any place or time, until after the jury's verdict was returned and accepted.

"10.

"On or about Thursday, December 13, 1962, and being on the day following the above described conversation between jurors Bradford and Anderson, the said juror Bradford drove his automobile to the place of business of Raymond Vaughn to return a gasoline can which he had previously borrowed, and on this occasion had another conversation with the said Raymond Vaughn.

"11.

"During the course of this last conversation juror Bradford asked the said Raymond Vaughn, in effect, whether or not the said Vaughn, shortly after the collision had occurred, had stated that on the day preceding the collision Butch Gregory had been having trouble with the carburetor on his automobile; and Vaughn made no reply to this inquiry, but, as described in the testimony, merely 'laughed it off'.

"12.

"On the occasion of this last conversation between juror Bradford and Raymond Vaughn there was some discussion about the previous experience of the said Raymond Vaughn at some railroad crossing other than the one involved in this suit and some discussion of stopping distance of an automobile at a certain speed not disclosed in the evidence; and the weight of the evidence does not show that the discussion about a crossing and stopping distance were material as to the facts or issues of this suit.

"13.

"Juror Newman Bradford was guilty of misconduct in inquiring of Raymond Vaughn as to the condition of the carburetor on the car of Butch Gregory on the day prior to the collision.

"14.

"Juror Bradford did not relate, discuss with, or mention to any other jurors, at any place or time prior to the return of the jury's verdict, the fact of his conversation with Raymond Vaughn on or about December 13, 1962, nor any of the

matters which were the subject of such conversation.

"15.

"There was no agreement or understanding among the members of the jury to answer the issues submitted to them

Under our system of jurisprudence, parties litigant are entitled to a verdict returned by each of the twelve jurors in such a manner as to bring about a judgment in favor of either the plaintiffs or the defendants, or in such a manner as to apportion responsibility for the accident between the parties.

"16.

"Juror Newman Bradford truthfully answered all questions propounded to him on voir dire examination of the jury panel and he did not intentionally misrepresent any fact touching his qualifications as a juror during such voir dire examination.

"17.

"The statement made by Raymond Vaughn to Newman Bradford shortly after the occurrence of the accident and prior to the time this suit was filed had no material effect on the verdict of the said juror Bradford.

*"Conclusions of Law*
"1.

"Considering the testimony which was adduced at the hearing on Plaintiffs' amended motion for new trial in conjunction with the entire record in this cause, it does not appear that the misconduct of juror Bradford, either in his statement to juror Anderson or in his subsequent conversation with Raymond Vaughn, probably resulted in injury to the plaintiffs or in the return of an improper verdict.

"2.

"The statement made by Raymond Vaughn to Newman Bradford shortly after the occurrence of the accident and prior to the time this suit was filed has no material effect on the verdict of the said juror Bradford."

2. "I.

"With reference to the first four additional findings requested by plaintiffs, the court finds as follows:

"1. Several times during the first week of the trial of this cause, and also during the first three days of the second week of the trial, the Court admonished the jury not to discuss the facts, or purported facts of the case, either among themselves, nor allow anyone to discuss same with them.

"2. In a talk to the complete venire before the jury was selected, and at least once during the trial of this cause, in the first day or so thereof, the Court admonished the jury not to try to make any investigation of the facts, or purported facts, themselves, because the

solely upon the law and the evidence permitted by the court to be introduced upon the trial. Southern Traction Co. v. Wilson, Tex.Comm.App., 254 S.W. 1104. Cases must be tried in the courtroom and a juror is not permitted to be a witness and it is

same would constitute misconduct, and such misconduct could result 'in all our efforts being wasted.'

"3. The Court, having stated to the jury that it was conceivable that some members thereof might have occasion to drive by the scene of the collision in question during the course of the trial, admonished them during the first week of the trial not to undertake any investigation or personal observations of any kind.

"4. The court, at the beginning of the trial, told the entire jury, including Newman Bradford, 'not to go out and seek information' on their own, 'or look for evidence.'

"II.

"With reference to additional findings numbered 5, 6, 7, and 8, requested by the plaintiffs, the Court refuses to make such findings.

"III.

"With reference to additional finding No. 9 as requested by plaintiffs, the court makes the following finding:

"9. Jurors Anderson and Bradford rode home together only once during the trial as found in the court's original finding No. 7 and that occurred during the second week of the trial prior to Friday, on which day the jury received the charge of the court.

"IV.

"With reference to additional findings Nos. 10 and 11 requested by plaintiffs, the court finds as follows:

"10. Newman Bradford told Raymond Vaughn at the Vaughn store, during the second week of the trial, that Bradford had been looking for Vaughn up at the courthouse as a witness because Vaughn had told Bradford that Butch Gregory's car died or his carburetor was out of shape the day before the accident.

"11. During the visit of juror Bradford at the Vaughn store during the second week of the trial, Bradford and Vaughn discussed how long it would take to stop a car traveling a certain speed, and so on.

"V.

"With reference to additional finding No. 12 requested by plaintiffs, the court finds as follows:

"12. The discussion found in No. 11, supra, was in regard to the Gregory lawsuit, but not material to the facts of issues therein.

"VI.

"With reference to additional finding No. 13 as requested by plaintiffs, the court refuses to so find.

"VII.

"With reference to additional findings Nos. 14 and 15 requested by plaintiffs, the court finds as follows:

"14. Juror Bradford brought up with juror Anderson the fact about the carburetor, when they rode home together during the second week of the trial and wondered why they hadn't brought it out.

"15. The 'carburetor' referred to was the carburetor on the Butch Gregory car.

"VIII.

"With reference to additional finding No. 16 as requested by plaintiffs, the court finds as follows:

"16. Juror Bradford told juror Anderson that he had heard, right after the accident on December 21, 1961, from Raymond Vaughn, that Butch Gregory had been having carburetor trouble on his car the day before such accident.

"IX.

"With reference to additional finding No. 17 as requested by plaintiffs, the court finds as follows:

"17. Juror Bradford mentioned the matter of carburetor trouble on the Butch Gregory car to juror Anderson one day and mentioned the same matter to Raymond Vaughn on the following day, as set out in findings Nos. 8 and 11 of the original finding of fact filed by the court, and these incidents both occurred during the second week of the trial.

"X.

"With reference to additional finding No. 18 as requested by the plaintiffs, the court refuses to make such finding.

"XI.

"With reference to additional finding No. 19 as requested by plaintiffs, the court finds as follows:

"19. Juror Bradford had knowledge of car trouble on the Butch Gregory car in the summer of 1961.

"XII.

"With reference to additional finding No. 20 as requested by plaintiffs, the court finds as follows:

"20. Juror Bradford and Raymond Vaughn, during the second week of the trial, conversed with reference to: (a) the condition of the carburetor the day before the accident, (b) a railroad crossing, (c) an experience with a milk truck, (d) distances and sights at a railroad

misconduct for a juror to give original evidence to the jury or to other jurors and it is misconduct for a juror to go out and seek evidence. In fact the trial court in his charge in this cause cautioned the jury to refrain from the very things that the record shows that juror Bradford did.

■ The fact that the misconduct of juror Bradford related mainly to himself together however with his statement to the juror Anderson, and was not conveyed to the other 10 jurors will not excuse the misconduct as it is well established that if the misconduct influenced the verdict of even one of the jurors, the verdict should be set aside. Texas Electric Ry. Co. v. Wooten, Tex.Civ.App., 173 S.W.2d 463, wr. ref., w. o. m.; Moore v. Ivey, Tex.Comm.App., 277 S.W. 106; Texas & Pacific Rwy. Co. v. Gillette, 125 Tex. 563, 83 S.W.2d 307, 309.

Misconduct on the part of juror Bradford is shown by undisputed evidence in the record as well as by the findings of the trial court.

■ Where jury misconduct is established, the question of whether injury probably resulted therefrom to the complaining party is a question of law for the reviewing court. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; Cloudt, et al. v. Hutcherson, Tex.Civ.App., 175 S.W.2d 643, wr. ref., w. o. m.

■ In our opinion, it reasonably appears from the evidence adduced on the motion for new trial, and from a careful consideration of the entire record, that the misconduct of juror Bradford was material misconduct and probably resulted in injury to the plaintiffs-appellants herein and that a new trial should be granted by reason thereof under Rule 327, Texas Rules of Civil Procedure. Appellants' second point is sustained.

Having found that the misconduct of juror Bradford was material and probably resulted in injury to plaintiffs, we deem it unnecessary to pass on the contentions made by appellants in their first, third and fourth points.

■ Appellants' 5th point is as follows: "The conduct of railroad counsel in telling the jury on voir dire examination that there was 'no insurance here' was material and prejudicial error, for which a new trial should be granted on the basis of the whole record." Upon voir dire of the jurors by appellee's counsel, the following occurred:

"'Q. (by Mr. Touchstone) You have never served on a jury?

"'A. Yes, I have, an insurance case.

"'Q. There is no insurance here.

"'A. And I have also served on a theft case * * *'".

Plaintiffs-appellants filed a motion for the trial court to instruct the venire that the statement in question was improper and withdrawn from consideration and for the venire to give it no effect whatsoever. Appellants in their brief refer to certain discussions which followed between the attorneys and the trial court. However, these discussions are not related here as the record shows that such discussions were had outside the presence of the jury. After the discussions the trial court gave the following instruction to the venire: "Ladies and gentlemen of the panel, let me have your attention, please. Mr. Touchstone, attorney for the defendant, mentioned in your presence there is no insurance in this case. You are instructed to disregard such statement and you will give it no effect whatever. * * *"

Unquestionably, the mention or injection of "no insurance" in the case by appellee's counsel was improper. Rojas v. Vuocolo, 142 Tex. 152, 177 S.W.2d 962, opinion

---

crossing, (e) stopping distances and experiences therewith of cars traveling a certain speed, and so on; but each such subject was mentioned or discussed only to the extent as specifically set out in the other findings made by the court.

"XIII.
"With reference to the additional conclusion of law as requested by plaintiffs, the court refuses to make such conclusion."

adopted; Dennis v. Hulse, Tex., 362 S.W. 2d 308.

However, the injection of either insurance or "no insurance" in a case, while improper, does not require reversal of a case unless it is shown that such error was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Rule 434, T.R.C.P. And to determine whether such error is reversible under Rule 434, T.R.C.P., the entire record must be examined. Dennis v. Hulse, supra.

After carefully considering the entire record in this cause, it is our best judgment that appellants' fifth point does not present reversible error. See Roosth & Genecov Production Company v. White, Tex.Civ.App., 281 S.W.2d 333, wr. ref., n. r. e., and the numerous authorities cited therein. Appellants' fifth point is overruled.

Appellants' 6th point is as follows: "The cumulative effect of the foregoing misconduct of juror Bradford and the conduct of railroad counsel was so material and harmful that a new trial should be granted herein."

We sustained appellants' second point and are reversing this cause primarily by reason of material misconduct on the part of the juror Bradford which we concluded was harmful and reversible error. We overruled appellants' 5th point holding that the injection of "no insurance", while error was not reversible error under Rule 434, T.R.C.P. We sustain appellants' 6th point. In this connection see the recent case of Rodman Supply Company v. Jones, Tex. Civ.App., 370 S.W.2d 951, and authorities cited therein. However, it is our view that irrespective of appellants' 6th point that the cause should be reversed and remanded primarily on appellants' 2nd point.

Appellants' 7th point is as follows: "The verdict of the jury is contrary to the overwhelming weight and preponderance of the evidence."

After carefully reviewing the entire record in this cause in the light of the rules enunciated in the case of In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, it is our view that the verdict of the jury is not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Appellants' 7th point is overruled.

For the reasons heretofore set out the judgment of the trial court is reversed and the cause is remanded for a new trial.