ST. LOUIS SOUTHWESTERN RAILWAY
COMPANY, Petitioner,

v.

Mrs. J. A. GREGORY et al., Respondents.

No. A–10203.

Supreme Court of Texas.

Jan. 27, 1965.

Rehearing Denied March 10, 1965.

Joe N. Chapman, Sulphur Springs, O. O. Touchstone and John B. Webster, Dallas, for petitioner.

Jones, Brian, Jones & Baldwin, Marshall, Howard S. Smith, Sulphur Springs, for respondents.

CALVERT, Chief Justice.

This suit grew out of a train-automobile collision at a railroad crossing. Damages were sought for the deaths of Thomas Ray (Butch) Gregory, J. A. Gregory and Douglas McCord, and for injuries to Mark Gregory, all occupants of the automobile. Trial was to a jury, and a take-nothing judgment was rendered on the jury's verdict. The Court of Civil Appeals reversed the trial court's judgment and remanded the cause to that court for a new trial. 377 S.W.2d 847. We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

Sixty-one special issues covering primary negligence of the defendant and its employees, contributory negligence of Thomas Ray Gregory, operator of the automobile, discovered peril, unavoidable accident and damages were submitted to the jury. We need not summarize all of the issues and the answers of the jury thereto. It is sufficient for opinion purposes to state that the jury did not find the defendant Railway Company or its employees guilty of any act of negligence which was a proximate cause of the collision; found that the occupants of the automobile were in a position of peril just before the collision, but that the operatives of the train did not discover the perilous position of such occupants in time to avoid the collision; found that the collision was not the result of an unavoidable accident; found that the air horn and bell on the locomotive were sounded prior to the collision; found that Thomas Ray Gregory was negligent in failing to heed the horn and bell, and that such negligence were proximate causes of the collision. From the findings thus summarized, it is obvious that the plaintiffs' rights to recover damages were barred by the failure of the jury to find the defendant or its employees guilty of any acts of negligence proximately causing the collision as well as by its findings that the negligent omissions of the operator of the automobile were proximate causes of the collision.

Plaintiffs' points of error in the Court of Civil Appeals presented five reasons why that Court should reverse the judgment of the trial court and remand the cause for a new trial. The reasons may be summarized as follows: (1) The juror Bradford was disqualified to serve as a juror in the case because of bias and because he possessed prior information on a vital issue in the case which he concealed on voir dire examination, and plaintiffs were therefore denied a fair jury trial. (2) Misconduct on the part of the juror Bradford. (3) Misconduct on the part of counsel for defendant. (4) The cumulative effect of misconduct of

juror Bradford and misconduct of counsel. (5) The verdict of the jury was contrary to the overwhelming weight and preponderance of the evidence.

■ The Court of Civil Appeals rejected reason (5) by its holding that the verdict was not contrary to the overwhelming weight and preponderance of the evidence. This Court has no jurisdiction to review that holding. Art. V, Sec. 6, Constitution of Texas, Vernon's Ann.St.; Electric Express & Baggage Co. v. Ablon, 110 Tex. 235, 218 S.W. 1030, 1034. The Court held that reason (3) did not require reversal of the trial court's judgment, but that reasons (2) and (4) did; and, having so held, the Court found it unnecessary to decide whether reason (1) required reversal. Before it may be said that the Court of Civil Appeals erred in reversing the judgment of the trial court and remanding the cause for a new trial, it must appear that none of the first four reasons presents a sound basis for that action. They will be considered in the order in which they have been listed.

## DISQUALIFICATION OF THE JUROR BRADFORD

The parties disagree as to whether the question of juror Bradford's disqualification was properly preserved for appellate court decision. The record discloses, clearly we think, that the question was not preserved.

■ Plaintiffs were required by Rule 324 [1] to file a motion for new trial as a prerequisite to their right of appeal. Under the provisions of Rule 320 they were required to "specify each ground" on which their motion was founded, under penalty that "no ground not specified shall be considered." Moreover, Rule 374 provides: "A ground of error not distinctly set forth in the motion for new trial, in cases where a motion for new trial is required shall be considered as waived." The matter of juror Bradford's disqualification was not includ-

---

1. All references to Rules are to Texas Rules of Civil Procedure.

ed in any assignment of error in plaintiffs' motion for new trial or in their amended motion for new trial, and was not, therefore, preserved for appellate court review. Parenthetically, it should be observed that the record reflects that Bradford did not conceal the fact on voir dire examination that he had prior information concerning the collision, as will now be shown.

The record reflects that shortly after the collision, which occurred on December 21, 1961, one Raymond Vaughn, operator of a country store, stated to Bradford that Thomas Ray Gregory had been having trouble with the carburetor on his car on the day before the collision. This suit was filed on March 16, 1962, and went to trial on December 3, 1962.

Voir dire examination of Bradford by defense counsel developed that he had heard about the accident on radio and had read about it in the newspaper. The examination continued with the following questions and answers:

"Q Now, did you ever discuss it with anybody?

"A Yes, sir, sure did.

"Q. Whom did you discuss it with?

"A Well, with my wife and the son Marvin [Gregory] lived about two and a half miles from where I live, and we trade at the same store, but we wasn't social, we didn't know each other actually before his brother was killed, but we trade at the same store and therefore I discussed it with the store owner there at the time it happened.

"Q You ever discussed it with Marvin?

"A. No, sure didn't.

"Q But you are both customers of the same store and you talked at the store about it. Did you talk to anybody else?

"A That is the only one I can think of.

"Q Now, from hearing it on the radio, reading about it in the newspaper, talking with the store owner, did you form any opinion?

"A No, sir.

"Q With reference to the merits of the matter?

"A No, sir, no evidence either way as far as I know.

"Q You formed no opinion?

"A No, sir."

■ It is to be noted that although Bradford plainly revealed, and did not conceal, the fact that he had discussed the accident with his wife and with the owner of the store where both he and Marvin Gregory traded, counsel for neither party saw fit to inquire into or to develop the substance of the discussion. Opportunity to make the inquiry out of the presence of the other prospective jurors was afforded, and thus could have been done without prejudice. The trial court found as a fact that Bradford "truthfully answered all questions propounded to him on voir dire examination"; and the record furnishes no reason for saying that Bradford would have failed or have refused to give honest answers to any other questions which might have been propounded. Having failed to probe into Bradford's conversation with Vaughn, plaintiffs are not in position to complain of the failure of Bradford to reveal the substance of the conversation. See City of San Antonio v. Willinger, Tex.Civ.App., 345 S.W.2d 577, no writ history.

## MISCONDUCT OF THE JUROR BRADFORD

The juror Bradford was undoubtedly guilty of misconduct and the trial court so found. The important question here, however, is whether Rule 327, governing the granting of new trials, required the trial court to grant a new trial because of the misconduct. The Court of Civil Appeals has held that it did, and this was the prin-

cipal reason for the action of that Court in reversing the judgment of the trial court.

■ The record discloses two acts of misconduct by the juror Bradford. The first occurred during the course of the trial and after adjournment of the court for the day. Juror Anderson was riding to his home as a passenger in Bradford's automobile. During the course of the trip, Bradford, according to the trial court's finding, "made a statement to juror Anderson to the effect that he, the said Bradford, had heard that Butch Gregory had been having trouble with the carburetor on his automobile the day before the collision occurred." The second act of misconduct occurred on the following day when Bradford drove his automobile to Raymond Vaughn's store on a business mission. While there Bradford asked Vaughn "in effect, whether or not the said Vaughn shortly after the collision had occurred, had stated that on the day preceding the collision Butch Gregory had been having trouble with the carburetor on his automobile," and he also told Vaughn that he, Bradford, "had been looking for Vaughn up at the courthouse as a witness because Vaughn had told Bradford that Butch Gregory's car died or his carburetor was out of shape the day before the accident." According to the trial court's finding and the testimony of both Bradford and Vaughn, Vaughn made no reply to Bradford; he "merely 'laughed it off.' "

Bradford's conduct was in violation of instructions given to the jurors by the court during the course of the trial that they should not "discuss the facts, or purported facts of the case, either among themselves, nor allow anyone to discuss same with them"; that they should "not undertake any investigation or personal observations of any kind"; and "not to go out and seek information or look for evidence." Undoubtedly the trial court could have punished Bradford for contempt for violating its orders had it chosen to do so. But that does not mean that the plaintiffs were entitled to a new trial.

■ Under the provisions of Rule 327, a party seeking a new trial because of misconduct of a juror has the burden of establishing to the satisfaction of the court that it "reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted" to him. There are some types of misconduct, such as jury tampering, in which the burden of proving probable injury is discharged, prima facie, by mere proof of the overt act itself. See Texas Employers' Insurance Ass'n v. McCaslin, 159 Tex. 273, 317 S.W. 2d 916. We do not regard this as such a case. As said by the Court of Civil Appeals in Aetna Casualty and Surety Co. v. Perez, 360 S.W.2d 157, 160, in commenting on the McCaslin rule, "This is the rule, and a good one, but its extension into new areas flirts with the re-adoption of the discarded rule of presumed harm in misconduct cases." Having concluded that mere proof of the acts of misconduct on the part of the juror Bradford does not establish that the trial was materially unfair to the plaintiffs, we examine the record to determine whether it discloses proof of probable injury to the plaintiffs.

■ The second act of misconduct can be disposed of summarily. According to the testimony of both Bradford and Vaughn, and according to the trial court's finding, Bradford received no reply from Vaughn when he was asked if he had not said that Butch Gregory had been having trouble with the carburetor on his car the day before the collision, or when Bradford stated that he had been looking for Vaughn as a witness at the trial. The testimony of both Bradford and Vaughn, and the finding of the trial court, is that Vaughn just "laughed it off." To say that this act of misconduct, however much subject to censure, probably resulted in injury to the plaintiffs would require the indulgence of a presumption, contrary to the testimony and to the trial court's finding, that Vaughn actually answered Bradford's question, and the indulgence of a further presumption

that Vaughn confirmed Gregory's carburetor trouble as a fact. Rule 327 does not permit our courts to pile one presumption on top of another and thus to reach a conclusion of probable injury.

The first act of misconduct presents a somewhat more serious question. It was not misconduct for Bradford to be in possession of the information which Vaughn had given him following the collision. It was misconduct for Bradford to pass that information on to the juror Anderson; but the nature of the misconduct was not such, standing alone, as to establish probable injury to the plaintiffs.

With respect to Bradford's statement to Anderson as to what he had been told by Vaughn, the trial court made the following finding:

"Except for this one statement made by juror Bradford to juror Anderson, neither the said juror Bradford nor juror Anderson mentioned or discussed the matter of carburetor trouble with any other member of the jury, at any place or time, until after the jury's verdict was returned and accepted."

All twelve jurors testified on the motion for new trial, and the trial court's finding is not controverted by the testimony of a single juror. However, it is a sound rule which requires that a new trial be granted if the verdict of even one juror is affected by misconduct. See Texas & P. Ry. Co. v. Gillette, 125 Tex. 563, 83 S.W.2d 307, 309. The question, then, is whether it reasonably appears from the record before us that juror Anderson's answers to the special issues probably were affected by the information communicated to him by Bradford. In deciding this question we must keep in mind that we are not permitted by Rule 327 to presume that they were.

On the issue as here stated, the record discloses only the following: That when Bradford told Anderson of Vaughn's statement, Anderson made no comment; that

the matter was not pursued by Bradford, and Anderson did not mention it to anyone until after the verdict was returned and accepted by the court; that Bradford did not purport to state as a fact that Gregory had carburetor trouble, but repeated only what Vaughn had said to him; that as the information reached Anderson it was clearly hearsay; that Anderson was charged by the court, as were all jurors, to answer the special issues from "the greater weight and degree of credible testimony," and by necessary implication was thereby charged not to answer them from hearsay statements heard out of court; that some of the jurors, but not Anderson, expressed the opinion during the jury's deliberations that Gregory was more at fault than were the train operatives; that the foreman polled each juror separately on each issue before the answer was written; that when the jury was dismissed, jurors Anderson, Bonham, Eddins and Boozer went for a cup of coffee and, according to Bonham, Anderson said to the others that "he knew we were going to have trouble with Newman [Bradford] when he came to the jury room because he had talked at a country store about the case with some other people."

There is nothing in the foregoing résumé of relevant parts of the record to lead reasonably to a conclusion that Anderson's answers to the various special issues were affected by the information imparted to him by Bradford. If it indicates anything, it indicates that Anderson's votes were unaffected. Particularly impressive on the issue is the fact that ten jurors who never heard of Vaughn's statement voted to give the same answers Anderson gave to the issues, and both the trial court and the Court of Civil Appeals have held that the answers are not against the great weight and preponderance of the evidence.

But it is argued that the jury's answers to some of the issues cannot reasonably be explained except upon the theory that the jury believed that a bad carburetor

was the cause of Gregory's car stopping on the railway track just before it was hit by the train. A jury's answers to special issues are often difficult to explain. Sometimes answers are so conflicting as to amount to no verdict at all, thus requiring a mistrial. It may be admitted that the answers to some of the issues in this case are not as logical as we might have given had we served on the jury, but that fact does not authorize us to presume, contrary to all of the testimony and to the trial court's finding, that the jurors Bradford or Anderson, or both, communicated Vaughn's prior statement to the other jurors and thus induced a unanimous verdict absolving the railroad of all fault in the collision.

### MISCONDUCT OF COUNSEL

During voir dire examination of Mrs. Harold Arnold by counsel for the defendant, the following occurred:

"Q. You have never served on a jury?

"A. Yes, I have, an insurance case.

"Q. There is no insurance here.

"A. And I have also served on a theft case * * *."

The questioning stopped at this point, and following a discussion between the judge and counsel for both parties, the judge gave the following instruction to the panel:

"Ladies and gentlemen of the panel, let me have your attention, please. Mr. Touchstone, attorney for the defendant, mentioned in your presence there is no insurance in this case. You are instructed to disregard such statement and you will give it no effect whatever."

Plaintiffs contend that defense counsel's statement, "There is no insurance here," told the panel, in effect, that the defendant railroad did not have liability insurance coverage, and that the statement was so highly prejudicial to the plaintiffs' case that the harm was incurable by instruction.

It may be admitted that the statement, whether in the nature of a spontaneous reaction to the prospective juror's answer, as defendant states, or otherwise, should not have been made, and was error. It does not follow, however, that the error "was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case" as is required by Rules 434 and 503 before a reversal of the trial court's judgment may be ordered. Even if the statement was interpreted by the prospective jurors to mean that the defendant did not have liability insurance coverage, rather than that the deceased persons did not have life or accident insurance, it is hardly probable that the jury, for that reason, would render a verdict favorable to the railway and against the plaintiffs. And if the statement was calculated, in some slight degree, to cause the jury to render a verdict which it would not otherwise have reached, the court's instruction was adequate to eliminate its harmful effect. Not every mention of insurance requires the setting aside of a jury's verdict. See Dennis v. Hulse, Tex. Sup., 362 S.W.2d 308.

### CUMULATIVE EFFECT OF MISCONDUCT OF THE JUROR BRADFORD AND MISCONDUCT OF COUNSEL

There is no need to repeat what has been said with respect to the misconduct of the juror Bradford and the misconduct of counsel. It is enough to say that it does not reasonably appear from the record before us that injury probably resulted to the plaintiffs from the cumulative effect of the two incidents. The series of acts of jury misconduct in Rodman Supply Co. v. Jones, Tex.Civ.App., 370 S.W.2d 951, no writ history, cited by the Court of Civil Appeals in support of its holding in this case, were calculated to be

far more prejudicial than the two acts of misconduct discussed herein.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

GREENHILL, Justice (dissenting).

This suit arose out of the death of members of the Gregory family when their car stopped or stalled on the railroad tracks and was struck by one of the railway's engines. Upon a trial to the jury, judgment was for the defendant railway. That judgment was reversed by the Court of Civil Appeals at Texarkana because of jury misconduct. 377 S.W.2d 847. I would affirm the action of the Court of Civil Appeals.

The controlling question is whether the jury misconduct, which admittedly occurred, was material and probably resulted in injury to the plaintiffs' case. Rule 327, Texas Rules of Civil Procedure. The trial court found that the misconduct occurred but held that it was harmless and probably did not result in injury to the plaintiffs' case. Whether the misconduct occurred is a question of fact, and that issue has been determined. Whether it probably resulted in injury is a question of law. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462 (1943); Pope, Jury Misconduct and Harm, 12 Baylor Law Review 355, 356 (1960).

On the question of the materiality of the jury misconduct and of probable harm, I am impressed with the following facts and circumstances: members of the train crew testified that the Gregory car stopped dead astride the rails; that the driver had plenty of time to get the car off the track if his car had been in good condition. The fireman could not explain why it did not move on. The jury found that neither the train operators nor Butch Gregory, the driver of the car, failed to keep a proper lookout. It found the train operators guilty of certain acts of negligence

(failure to sound its horn or ring its bell at least 80 rods from the crossing), but found that these acts were not a proximate cause. It found that the horn and bell were operating [immediately] prior to the collision, and that it was negligence for Butch Gregory not to heed them, and that this was a proximate cause. Then it found that Butch Gregory neither stopped the car, nor permitted it to stall, on the tracks; and that he did not fail to keep the car under proper control. It found that Butch Gregory failed to yield the right-of-way to the railroad, but this was not a proximate cause. It further found that though the train was in dangerous proximity to the Gregory car as it approached the tracks, this was not a proximate cause; and that Butch Gregory's failure to stop within 15 feet of the track was not a proximate cause. It found that Butch Gregory failed to drive forward off the tracks, *but that this was not negligence.*

Why, then, did Butch Gregory not move off the tracks? If the negligent acts of the train crew were not the proximate cause of the accident, what was? The juror Bradford testified on motion for new trial that he remembered that a grocer, Vaughn, had told him that Butch had been having carburetor trouble with that car on the day before the accident. The same juror, one evening during the course of the trial, drove the juror Anderson home from the courthouse. Bradford told Anderson about the conversation he had had with Vaughn, about the Gregory car having the defective carburetor the day before the Gregory car failed to move off the track. Bradford said he remarked to Anderson that he "wondered why they [the railroad] hadn't brought it out." Anderson asked what carburetor Bradford was talking about, and Bradford explained that he was talking about the carburetor on Butch Gregory's car. This unquestionably was jury misconduct. The juror Anderson confirmed that this conversation took place. He did not comment to Bradford on the matter.

On the following day, while the case was still being tried, Bradford went back to the grocer Vaughn at his store, and told him he had been expecting him, Vaughn, to be a witness at the trial. Bradford said, "I had been looking for him up here since he had told me about the carburetor." Bradford said he asked Vaughn, "Didn't you tell me immediately after this wreck that this boy was having trouble there?" Vaughn did not reply to the question; "he laughed it off." This action by Bradford was also, beyond question, jury misconduct.

There was no testimony upon the trial that the Gregorys had been having carburetor trouble before the accident. The railroad had unsuccessfully attempted to establish that fact. Bradford deliberately made a trip to Vaughn's grocery store to attempt to confirm Vaughn's statement to him that Butch Gregory had been having car trouble. Bradford apparently remained convinced that Vaughn had told him that, even though when confronted with the question, Vaughn "laughed it off," whatever that may mean. Mrs. Gregory testified that some six months before the accident, there had been carburetor trouble; but Mr. Gregory had had a new motor put in the car, and there had been no further difficulty. The information which Bradford furnished the juror Anderson was calculated to impeach the credibility of Mrs. Gregory's testimony. Even though there was evidence that neither Bradford nor Anderson had discussed this matter with any other juror, the testimony which juror Bradford gave the juror Anderson furnishes a logical explanation for the jury's findings: that Gregory did not stop his car or [intentionally] permit it to stop, on the tracks; that he and the train crew were both keeping a proper lookout; and the train crew's negligence was not the proximate cause of the collision. The explanation would be that the car stalled because of the carburetor. Hence Gregory's failure to move was not negligent conduct. He could not move.

I am unable to say, under these circumstances, that the misconduct was harmless and did not result in probable harm. "The burden of the complaining party is met by showing that the trial which resulted in a judgment against him was materially unfair." Texas Employers' Insurance Association v. McCaslin, 159 Tex. 273, 317 S.W.2d 916 (1958). I would hold that the misconduct was material and probably resulted in harm.