STATE OF CONNECTICUT *v.* GEORGE LUIS MARTINEZ

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued June 10—decision released October 4, 1977

*Nicholas P. Cardwell,* for the appellant (defendant).

*Bernard D. Gaffney,* assistant state's attorney, with whom, on the brief, was *George D. Stoughton,* state's attorney, for the appellee (state).

PER CURIAM. The jury in this case reported, after some deliberation, that they were deadlocked. The court delivered the "Chip Smith" charge,[1] and the jury returned to their deliberations. Subsequently the jury reported for the second time that they were deadlocked. The defendant's sole claim on appeal is that the court then charged the jury in a manner which was both erroneous and prejudicial, after which the jury returned a guilty verdict.

The second charge in its entirety was as follows:

"All right. Sit down, please, ladies and gentlemen. I have your note which says: 'We have reached a deadlock.' Well, my recollection, ladies and gentlemen, is that you have been considering this case for approximately four and a half hours; and you must understand that it is always a terrible disappoint-

---

[1] Based on *State* v. *Smith,* 49 Conn. 376, 386.

ment when the jury cannot arrive at a verdict. What it means is—this is the consequence of this—that I will have to declare a mistrial in this case and the case will have to be tried again, at some other time, before another group, people just like yourselves. So that this further means that the alleged victim in the case, Miss Diaz, and the defendant, Mr. Martinez, will have to suffer the anguish and the pain of waiting and waiting until this whole process is gone through again and again at some future time.

"Now there's something inherently unfair about that, and it seems to me that four and a half hours is not sufficient time for you to have considered all the consequences of not arriving at a decision. So, with that in mind, I'm going to ask you, would you care to consider this further or not? I can listen to a consensus, at least, and then determine what to do."

A juror started to make a remark. The court interrupted him.

"Just a moment, sir. . . . [M]y final question . . . was: In view of these consequences, would the jury be willing to consider this case further? And that's the answer I want."

Another juror expressed willingness.

The court responded: "All right, with that in mind, I want you to do that. If you don't arrive at a verdict before five o'clock, then we'll consider it again tomorrow morning. There's no urgency about this. I want you to be comfortable about it. I want you to be happy about it. And I want you to know that you have done your job as responsible citizens. The more time you take, it's obvious to all of us that you are doing it with intelligence and care and con-

cern, which is all we ask. But in view of what you'll be doing to these people, all of them, it just isn't fair. So I'll ask you to continue on. Thank you very much."

Before the court delivered the second charge, the attorney for the defendant moved that the jury's report that they were deadlocked be accepted by the court, without further instruction. When the court announced its decision to urge the jury to continue deliberations, the defendant took an exception. The record does not reveal any objection or exception based on the actual wording of the charge as given. The defendant apparently relies on the denial of his motion for a mistrial, which gave the second instruction as a ground. This motion was filed the day after the jury returned their verdict.

The "Chip Smith" charge, which has been approved by this court on numerous occasions; e.g., *State* v. *Ralls,* 167 Conn. 408, 424, 356 A.2d 147; *Tough* v. *Ives,* 162 Conn. 274, 278–79, 294 A.2d 67; sets forth the duty of each juror to reach his own conclusion and to avoid "mere acquiescence." This duty was not mentioned in the second charge. Had the defendant called the court's attention to this omission when it was still possible to correct it by recalling the jury, it would be difficult to justify refusal to do so. By the time that the motion for mistrial was filed, however, no correction was possible. The question was whether the charge was so erroneous that it rendered it apparent that the defendant could not have a fair trial. *State* v. *Grayton,* 163 Conn. 104, 112, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495. A trial court has a large measure of discretion in deal-

ing with a motion for a mistrial. *State* v. *Ruiz,* 171 Conn. 264, 274, 368 A.2d 222; *State* v. *Rosa,* 170 Conn. 417, 429, 365 A.2d 1135.

The court's final charge did not really deal with the process of coming to agreement at all. It did not urge jurors to listen to the arguments of their fellow jurors in an effort to reach agreement. For that reason, the absence of any mention of the duty to avoid "mere acquiescence" is not fatal. Essentially, the charge dealt only with the desirability of continuing to deliberate. The remarks concerning the "unfairness" of stopping deliberations, while not remarks which would serve as model jury instructions, refer to both the victim and the defendant in evenhanded terms. The comment that "four and a half hours is not sufficient time" is not prejudicial to the defendant. If anything, it emphasizes the duty of the jury to give careful consideration to the case. And although the court did not tell the jury that deadlock is a possible and proper result of deliberations, this court has ruled that a "defendant is not entitled to an instruction that a jury may 'hang.'" *State* v. *Ralls,* supra, 422; accord, *United States* v. *Sawyers,* 423 F.2d 1335, 1340 (4th Cir.). Nor has it been shown that the remark, "[T]he case will have to be tried again," was likely to influence jurors to bring in a guilty verdict.

In sum, it cannot be said that the court abused its discretion in denying the motion for a mistrial.

There is no error.