STATE OF CONNECTICUT *v.* THOMAS HACKETT

COTTER, C. J., BOGDANSKI, PETERS, SHEA and WRIGHT, Js.

Argued October 17—decision released December 16, 1980

*Harry T. Alexander,* of the bar of Washington, D.C., and *Igor I. Sikorsky, Jr.,* for the appellant (defendant).

*Paul E. Murray,* assistant state's attorney, with whom, on the brief, was *Francis M. McDonald,* state's attorney, for the appellee (state).

PETERS, J. This is an appeal from a conviction of murder and robbery in the first degree. The defendant, Thomas Hackett, was charged in one count, by indictment, with murder in violation of General Statutes § 53a-54 (a) (2)[1] and in a second

---

[1] At the time of the acts charged by the indictment that section read: "[General Statutes] Sec. 53a-54. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when: . . . (2) acting either alone or with one or more persons, he commits or attempts to commit robbery . . . and, in the course of and in furtherance of such crime

count, by information, with robbery in the first degree in violation of General Statutes § 53a-134.[2] The jury returned a verdict of guilty on each count. Having denied, after a hearing, the defendant's motion to set aside the verdict, the trial court, *McGrath, J.,* rendered judgment against the defendant, and this appeal ensued.

At the trial, there was evidence from which the jury could have found that Oliver Gomes, Jr., the owner of Dene's Restaurant in Waterbury, had been shot to death while he was sitting in the driver's seat of his automobile. The murder occurred in the early hours of March 27, 1973. Witnesses testified that the defendant had been threatening Gomes shortly before the murder and that the defendant and one Philip Parker were at the scene of the crime. The murder gun had been sold to the defendant prior to the murder and had never been reported stolen or missing. These facts are not seriously disputed on this appeal. Rather, the defendant argues

. . . he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this subsection, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

[2] At the time of the acts charged by the information that section read: "[General Statutes] Sec. 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon or dangerous instrument."

that it was Parker, who was concededly with the defendant and Gomes in the car when Gomes was shot, who was the murderer.

On this appeal, the defendant raises sixteen specific claims of error. Two claims charge ineffective assistance of counsel, nine claims contest certain evidentiary rulings by the trial court, one claim alleges judicial misconduct in connection with a conference with a juror, three claims challenge portions of the instructions to the jury, and the last claim challenges the sufficiency of the evidence for conviction.

## I

The defendant claims that he was rendered ineffective assistance of counsel with regard to counsel's pretrial preparations, conduct of the trial, and post-trial pursuit of relief from conviction. In support of these allegations, the defendant alleges that he offered his counsel his own sworn testimony, and that of other unidentified witnesses, to contradict the state's version of what transpired on the morning of the murder, but that this evidence was neither used nor investigated. These unsupported allegations fall far short of demonstrating that defense counsel's performance was not "reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." *State* v. *Clark,* 170 Conn. 273, 283, 365 A.2d 1167, cert. denied, 425 U.S. 962, 96 S. Ct. 1748, 48 L. Ed. 2d 208 (1976), quoting *Gentry* v. *Warden,* 167 Conn. 639, 646, 356 A.2d 902 (1975); *State* v. *Barber,* 173 Conn. 153, 155, 376 A.2d 1108 (1977); *State* v. *McClain,* 171 Conn. 293, 301, 370 A.2d 928 (1976). These and similar allegations have, moreover, been made and found wanting on

three previous occasions; they were presented in habeas corpus petitions to the Superior Court, *Parskey, J.,* and *Cramer, J.,* and to the United States District Court for the District of Connecticut, *Newman, J.* We conclude, as did each of these courts, that the defendant has failed to meet his burden of proving inadequate assistance of counsel before or during his trial.

The defendant's second claim of inadequate assistance of counsel is based on the inordinate amount of time which has elapsed since the defendant's filing of his notice of appeal on April 4, 1974. We agree that so protracted a delay of appellate proceedings, even at the behest of the defendant, is indeed unfortunate and to be avoided. It is difficult, however, to place responsibility for this delay upon trial counsel, who did not purport to represent the defendant on this appeal. The defendant was in fact represented by a succession of other attorneys, some of whom encountered health problems and others of whom pursued collateral matters, rather than the main appeal, for the defendant. The defendant himself requested several postponements to procure out-of-state counsel and to permit that counsel to familiarize himself with the case. The defendant's right to appeal has not been substantively abridged by the delay. The appeal is now fully before us and its resolution has in no way been altered by the delay in its prosecution. Under these circumstances the defendant's claim of inadequate assistance of counsel cannot be sustained.

## II

The defendant's evidentiary claims contest the trial court's decisions to admit certain exhibits into evidence and to permit certain testimony to stand.

In addition, the defendant claims error with regard to limits imposed upon his cross-examination of some of the state's witnesses.

The evidentiary claims concerning exhibits admitted into evidence by the trial court fail to show the commission of reversible error. A photograph taken of the defendant at the time of his arrest was properly admitted, despite the fact that the defendant had not then been advised of his rights under *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), because a photograph is not a confession or other evidence of a testimonial nature. *Gilbert* v. *California,* 388 U.S. 263, 266–67, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967); *Schmerber* v. *California,* 384 U.S. 757, 764, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966); *State* v. *Chesney,* 166 Conn. 630, 640, 353 A.2d 783, cert. denied, 419 U.S. 1004, 95 S. Ct. 324, 42 L. Ed. 2d 280 (1974). A coat claimed to have been worn by the victim on the night of the shooting was sufficiently identified by a witness so that its admissibility was within the sound discretion of the trial court. *State* v. *Piskorski,* 177 Conn. 677, 695–98, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); *State* v. *Schaffer,* 168 Conn. 309, 317–18, 362 A.2d 893 (1975). The murder weapon, shell casings and bullets were properly admitted upon the testimony of Lieutenant Mullaly, the police officer who found these items of evidence. The fact that the officer was led to this evidence by Parker does not make inadmissible, as hearsay, the statement of what the officer himself saw and did. *State* v. *Saia,* 172 Conn. 37, 48, 372 A.2d 144 (1976); McCormick, Evidence (2d Ed.) § 246.

The defendant maintains that the testimony of Mullaly should have been excluded, apart from the

evidentiary exhibits for which it provided a foundation. The defendant raises two objections to this testimony. The objection that Mullaly's own actions and observations are hearsay has already been addressed and rejected. The other objection alleges that Mullaly violated a sequestration order of the court, an order that the witnesses not talk to future witnesses subsequent to their own testimony. Mullaly testified, on cross-examination, that he had read a report of Sergeant McKay. McKay was never called as a witness, and there was no other claim of improper conversation between Mullaly and any other witness. There is therefore no evidence that the terms of the court's sequestration order were not honored by Mullaly.

The defendant assigns error to conduct of the trial court that is alleged to have interfered with the right of the defendant to cross-examine witnesses for the state. There can be no doubt that the defendant is entitled fairly and fully to confront and to cross-examine the witnesses against him. U.S. Const., amends. VI, XIV; Conn. Const., art. I § 8; *Davis* v. *Alaska,* 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *Chambers* v. *Mississippi,* 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *Pointer* v. *Texas,* 380 U.S. 400, 403–404, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); *State* v. *Jones,* 167 Conn. 228, 232, 355 A.2d 95 (1974); *State* v. *Luzzi,* 147 Conn. 40, 46, 156 A.2d 505 (1959). What is at stake on the present appeal is not the principle itself but rather its application to the proceedings in the trial court in this case.

The claim with respect to the witness Henry Porter arose when Porter was repeatedly asked whether he had ever been known as, or been called,

Henry Campbell. After Porter had answered four such questions in the negative, defense counsel sought to examine Porter on an encounter with a Mrs. Cosgrove, to which the state objected. Without making an offer of proof, the defendant argued that the question was a legitimate test of the veracity of the witness. The court, however, sustained the objection to the question on the ground of irrelevance. This ruling was well within the trial court's discretionary power to exclude inquiry into matters too remote from the central issues in the case. *State* v. *Mastropetre,* 175 Conn. 512, 521, 400 A.2d 276 (1978); *State* v. *Reed,* 174 Conn. 287, 299–300, 386 A.2d 243 (1978).

The claim with respect to the witness Parker arose toward the end of a searching cross-examination designed to bring out motivation, intent, and bias on the part of the witness. Parker was the state's chief witness against the defendant. He was an accomplice who had turned state's evidence. During the cross-examination, which took two court days, he was examined at length about his confession to the police in which he implicated the defendant. He was asked about, and testified to, the circumstances leading to the confession, and about his fear of the police and of a possible charge of murder against him. He was interrogated about his unsuccessful effort to have his confession suppressed as involuntary. He was questioned in detail about an agreement between him and the state, entered before the trial court, concerning his own trial and that of this defendant.

This agreement, which was introduced without objection as a defense exhibit, and read to the jury, provided that (1) Parker would waive his fifth

amendment privilege against testifying in the case of *State* v. *Hackett* (the present case) without prejudice to his assertion of such rights in his own case; (2) the state agreed not to use against Parker in his own case whatever testimony Parker gave in the case against the defendant Hackett; (3) the state did not waive its right to use any other statements made by Parker at any other time, and specifically granted him no immunity; (4) Parker agreed to waive his right to claim a speedy trial and agreed that his trial would follow that of the defendant Hackett; (5) the state agreed "to consider Parker's cooperation in the Hackett matter with respect to any disposition of his case, if such is received; that is, cooperation, and to so recognize the same cooperation in any following trial of Parker, if such cooperation is received"; and (6) in the event of any misstatements or perjury on the part of Parker, the agreement was to be null and void.

Parker, in the cross-examination relating to this agreement, was asked several times whether he expected the state to go easy on him if he cooperated with the state. He agreed, repeatedly, that he did expect leniency and that he expected the charge of murder against him not to be pursued, although he knew no promises had been made. Thereupon, the defendant inquired, "[p]rior to this date [the date of the agreement], did your attorney enter into any plea bargaining with the State's Attorney's office?" The state objected to the question on three grounds, first, that the fact of plea bargaining was inadmissible, second, that the plea bargaining which had taken place had involved this defendant as well as Parker, and third, that the question was wrong as a matter of form, in that the only proper question would be whether or not a

plea bargain had been struck. Over the defendant's claim that the question was admissible to show motivation and bias, the court sustained the objection. The witness had on one earlier occasion testified that he had plea bargained and on another had testified that he understood that he might get leniency in case he "copped out on a plea." Looking at the record as a whole, we cannot find error in the failure to allow the disputed question to be asked. One adverse ruling in more than 200 pages of extensive cross-examination is not an undue restriction of legitimate inquiry into bias, interest, motive, or expectation of leniency. *State* v. *McDaniel,* 176 Conn. 131, 136, 405 A.2d 68 (1978). In contradistinction to *State* v. *Corley,* 177 Conn. 243, 245–47, 413 A.2d 826 (1979), the defendant in this case was allowed to explore the witness's expectation or hope for immunity or leniency in the disposition of his own case. In contradistinction to *Annunziato* v. *Manson,* 566 F.2d 410, 412 (2d Cir. 1977), the bargain that the witness had struck with the state was fully disclosed to the jury. While cross-examination "is a substantial legal right which may not be abrogated or abridged at the discretion of the court to the prejudice of the cross-examining party"; *State* v. *Luzzi,* supra, 46-47; there was no improper abridgement of that right here.

The defendant's final claim of interference with his right of cross-examination relates to the witness Ronald Hunter. Defense counsel sought to test Hunter's veracity and accuracy of recall with reference to a written statement earlier given by the witness. The state first asked that the entire written document be offered as a full exhibit, to which the court agreed over the defendant's objection. Upon further examination of the exhibit, the court decided

that it should be retracted and so ordered. After this reversal of the court's ruling the defendant made no attempt to pursue his previous cross-examination of the witness concerning the written statement. He makes no claim that his cross-examination of Hunter was otherwise impaired. In the absence of any showing of prejudice, we find no reversible error in the trial court's temporary admission of a document which the court, upon reflection, determined to exclude. That the state attempted to interpose one objection to the defendant's cross-examination of a state's witness is not a basis for finding abrogation or abridgement of the right to cross-examination. *State* v. *McDaniel,* supra; *State* v. *Luzzi,* supra.

## III

The defendant claims that the trial court committed reversible error in holding an ex parte conference with a juror. This claim arises out of the dispute concerning the exhibit introduced by the state during the cross-examination of Hunter. As previously noted, the court first agreed to admit this exhibit, state's exhibit S, into evidence but subsequently decided to retract and to exclude it.

The undisputed facts surrounding the admission of state's exhibit S are as follows: The exhibit was offered into evidence late in the afternoon of a trial day. After the exhibit had been passed to one juror, Mrs. Naylor, court was adjourned for the day and the exhibit retrieved from Naylor by the sheriff. The other jurors were told that they would be able to review the exhibit on the next trial day.

Before the next trial day, the court determined that the defendant had been correct in objecting to

admission of the exhibit and that it should be with-drawn. On the morning of the next trial day, the court, ex parte, intercepted Naylor before she could enter the jury room to instruct her not to consider the contents of exhibit S and not to discuss it with the other jurors. At the opening of court that day, the court indicated its reconsideration of the admissibility of exhibit S and reported the content of the conversation with Naylor. Naylor agreed, in open court, that she had told the court that she had merely glanced through the report without having had an opportunity fully to digest it. She stated also that she had not discussed the exhibit with any member of the jury and that she would disregard it completely. The defendant did not object at that time to what had transpired, and did not avail himself of the offer to have an alternate replace Naylor on the jury. Later that day, after the noon recess, the defendant asked for a mistrial, arguing that the jury might have been prejudiced by the confusion about the admissibility of the exhibit. After the motion for mistrial was denied and the defendant duly excepted, the defendant then requested Naylor's removal from the jury and she was replaced by an alternate. At no time during the trial court proceedings did the defendant object to the trial court's conversation with Naylor, nor was the motion for mistrial premised on that ground.

The propriety of the trial court's action was not promptly raised in the trial court, as it should have been; we might refuse to consider this claim for that reason. See Practice Book, 1978, § 3063. We are, however, mindful of the defendant's argument that he was inadequately represented by counsel in the trial court. Furthermore, we have held that in criminal trials there is a constitutional requirement

that all communications between a judge and a juror take place in open court. *Aillon* v. *State,* 168 Conn. 541, 546, 363 A.2d 49 (1975). This claim therefore falls within the constitutional exception stated by *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), and is reviewable. But see *United States* v. *Jones,* 597 F.2d 485, 488–89 (5th Cir. 1979).

Reaching the merits of the claim, we find nothing that supports reversal of the defendant's conviction. It is arguable that the trial court's conduct in addressing the juror, Naylor, ex parte, rather than temporarily separating her from the other jurors, was a technical violation of the defendant's constitutional right "to be present at every stage of the trial and to have the assistance of counsel for his defense. U.S. Const., amend. VI, XIV; *Illinois* v. *Allen,* 397 U.S. 337, 338, 90 S. Ct. 1057, 25 L. Ed. 2d 353 [1970]; *United States* v. *Wade,* 388 U.S. 218, 226, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 [1967]; *State* v. *Ralls,* 167 Conn. 408, 419, 356 A.2d 147 [1974]; see *Shields* v. *United States,* 273 U.S. 583, 588, 47 S. Ct. 478, 71 L. Ed. 787 [1927]." *Aillon* v. *State,* supra, 546. The trial court was, however, exercising judicial discretion in a way designed to serve the ends of public justice; cf. *State* v. *Roy,* 182 Conn. 382, 386, 438 A.2d 128 (1980); for the legitimate purpose of minimizing a minor risk of juror confusion. Even if we were to conclude that the trial court had inadvertently violated the defendant's right to open court proceedings, we would have to find that the defendant was not prejudiced by what occurred. It is, of course, not sufficient that the defendant can point to no prejudicial harm, since it is the burden of the state to show that a constitutional error was harmless beyond a reasonable doubt. *Aillon* v. *State,* supra, 548. Here,

the absence of prejudice is established: by the full and immediate disclosure in open court of what had transpired; by the opportunity then afforded to the defendant to make inquiry of Naylor and of the remaining jurors; and by the discharge of Naylor and the substitution of an alternate juror in her place. It would be sheer speculation to draw any causal connection between these events and the jury's otherwise unchallenged deliberations three weeks later.

## IV

The defendant's appeal raises three claims of error with regard to the instructions given to the jury by the trial court. The defendant argues that the trial court erred in its charge with respect to corroboration of the testimony of the accomplice Parker, with respect to the possible liability of the defendant as principal and as accessory, and with respect to lesser included crimes. We have reviewed these assignments of error and find them to be unpersuasive. The court correctly charged that there was evidence which, the state claimed, served to corroborate, to fortify and to strengthen the testimony of the accomplice Parker; the court related, but did not endorse, the state's view of what the evidence had shown. Even though the court had earlier indicated to counsel that it might not include, in this instruction about corroboration, a reference to moneys arguably taken from the victim, the instruction as given was correct. With respect to the other claimed errors in the charge, we note that no exception was taken at trial. Read as a whole, the court's extensive charge fairly presented to the jury the issues they had to resolve. *State* v. *Piskorski,* 177 Conn. 677, 746, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979);

*State* v. *Harden,* 175 Conn. 315, 322, 398 A.2d 1169 (1978); *State* v. *Mullings,* 166 Conn. 268, 274–75, 348 A.2d 645 (1974).

## V

The defendant's final claim of error is that his conviction was contrary to the weight of the evidence and in violation of General Statutes § 54-83. These claims both relate to the sufficiency of the evidence to convict the defendant. It is not disputed that the evidence must, at this juncture, be viewed in the light most favorable to sustaining the jury's verdict finding the defendant guilty. "[The verdict] will be set aside only where there is insufficient evidence to warrant a finding of guilty beyond a reasonable doubt. It is clearly the province of the jury to weigh the credibility of the witnesses and to draw all fair and reasonable inferences from the facts and circumstances which the jury finds established by the evidence." (Citations omitted.) *State* v. *Grant,* 177 Conn. 140, 142, 411 A.2d 917 (1979).

It is clear in this case that there was ample evidence upon which to convict the defendant if the jury chose to believe the testimony given by the accomplice Parker. Parker's evidence was corroborated by other witnesses who testified to threats by the defendant and who placed him at the scene of the crime. The jury might also have found credible the identification of the murder weapon as a gun owned by the defendant. Both as a matter of constitutional law, and for the purposes of § 54-83;[3]

---

[3] General Statutes §54-83 reads as follows: "TESTIMONY REQUIRED IN CAPITAL CASES. No person shall be convicted of any crime punishable by death without the testimony of at least two witnesses, or that which is equivalent thereto." We take no position on the applicability

see *State* v. *Tillman,* 152 Conn. 15, 21, 202 A.2d 494 (1964); the jury's verdict must stand.

There is no error.

In this opinion the other judges concurred.

of § 54-83 to capital crimes prosecuted at a time when existing statutes imposing a death penalty had been declared unconstitutional. The state notes that the instant crime occurred before the effective date of Public Acts 1973, No. 73-137 reinstating the death penalty.