STATE OF CONNECTICUT *v.* STEPHEN McCALL

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued January 6—decision released May 11, 1982

*Joette K. Rubin,* assistant public defender, with whom, on the brief, was *Jerrold H. Barnett,* public defender, for the appellant (defendant).

*Linda K. Lager,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *John J. Kelly,* assistant state's attorney, for the appellee (state).

SHEA, J. The defendant was found guilty by a jury of the crimes of sexual assault in the second degree in violation of General Statutes § 53a-71 and of risk of injury to the health or morals of a minor in violation of General Statutes § 53-21. From the judgment rendered in accordance with the verdict, he has appealed, claiming errors in the judge's failure to declare a mistrial after an ex parte conversation between a juror and the judge; in the charge on insanity; in the admission of evidence of prior misconduct of the defendant and of disclosure of the result of a former competency determination; in the charge on expert testimony; and in the subjection of the defendant to double jeopardy by his conviction on both counts. We find no error.

The jury might reasonably have found the following facts: The victim's father drove the defendant and Laurna Bell, a twenty-five year old woman, in his car from New Haven to Stratford

on the morning of January 6, 1977, so that they could apply for jobs at the Sikorsky Aircraft plant. During the trip, the driver repeatedly stopped the car to put air in a leaky tire. In his absence the defendant made suggestive remarks to Bell, proclaiming his expertise in oral sex. She rejected his advances, expressing her disgust. At 11:30 a.m., while the defendant and Bell were still in the car, the driver picked up his five-year-old daughter from school. Before Bell was dropped off, she observed the defendant eyeing the little girl "like a little pervert." The victim's father drove his daughter and the defendant to his apartment where all three had lunch. Shortly thereafter, the father went out to purchase a pack of cigarettes. The defendant took the little girl to a bedroom, pulled down her pants, and performed cunnilingus for a minute until she told him to stop. When her father returned, she was crying, and forty-five minutes later the defendant admitted what he had done and said that he "got the vibes that said he should do this to all young black girls." The father called the police and the defendant was arrested. He gave the police a statement admitting the sexual assault, but subsequently refused to sign it.

The defendant filed notice of intent to use mental disease or defect as a defense pursuant to Practice Book § 758 (formerly § 2169).

## I

The defendant claims that his motion for a mistrial, occasioned by the events surrounding a conversation between a juror and the judge in the absence of counsel, was improperly denied. The facts relating to the conversation are not disputed. The juror, who professed to be the foreman,

approached the judge in the hall during a recess to express his concern, shared with three other jurors, that a fifth member of the jury, Anne Norcross, was not capable of being impartial. The judge asked him to come into his chambers. The juror then told the judge that, after hearing the testimony of the psychiatrists, Norcross had told the other jurors that her son had symptoms similar to those of the defendant. When the foreman left the chambers, the judge called in counsel to inform them of the meeting. The judge told them what the foreman had said and that he had simply thanked the foreman for giving him the information. Counsel for each party suggested that the substance of the incident be put on the record and this was done accordingly. After a weekend recess, counsel for the defendant moved for a mistrial on the grounds that the defendant's right to trial by an impartial jury and to due process of law had been violated in that (1) deliberations had taken place prior to the close of evidence; (2) an alternate may have participated in those deliberations; (3) extrinsic evidence supplied by a juror had been considered; and (4) the meeting between the foreman and the judge had taken place without the presence of counsel.

"[I]t is improper for jurors to discuss a case among themselves until all the evidence has been presented . . . and the case has been submitted to them after final instructions by the trial court." *State* v. *Washington,* 182 Conn. 419, 425, 438 A.2d 1144 (1980); 89 C.J.S., Trial §§ 457 (e) and 460 (b); 75 Am. Jur. 2d, Trial § 994. An instruction authorizing such premature discussion is reversible error. Ibid.; *Winebrenner* v. *United States,* 147 F.2d 322, 329 (8th Cir.), cert. denied, 325 U.S.

863, 65 S. Ct. 1197, 89 L. Ed. 2d 1983 (1945). Where, however, there has been no authorization, a discussion among jurors prior to the trial charge has been held not to be fatal. *United States* v. *Klee,* 494 F.2d 394, 396 (9th Cir. 1974); *Pleasant Hill* v. *First Baptist Church,* 1 Cal. App. 3d 384, 427–28, 82 Cal. Rptr. 1 (1969); *Wilson* v. *California Cab Co.,* 125 Cal. App. 383, 386, 13 P.2d 758 (1932); *Glasgow Realty Co.* v. *Metcalfe,* 482 S.W.2d 750, 757 (Ky. 1972); *Higgins* v. *Dean Gas Engine & Foundry Co.,* 140 Ky. 44, 45, 130 S.W. 800 (1910); *St. Louis Southwestern Ry. Co.* v. *Gregory,* 387 S.W.2d 27, 31 (Texas 1965).

The test is "whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." *United States* v. *Klee, supra,* 396. A trial court has a large measure of discretion in dealing with a motion for a mistrial; *State* v. *Martinez,* 173 Conn. 541, 544, 378 A.2d 517 (1977); and its decision as to the fairness of the trial must be afforded great weight. *United States* v. *Klee, supra,* 396. The foreman's recapitulation of the discussion among the jurors did not contain assertions that any juror had made up his mind. See *United States* v. *Klee, supra,* 396. The record indicates only that four jurors felt a fifth could not serve impartially because of her familiarity with schizophrenia, a disease for which her son had been treated and which manifested itself by ideation similar to that exhibited by the defendant. The court declared its belief that there had not been "any extended discussions so that opinions have been reached by the other members of the jury."

It could be reasonably inferred that Norcross' personal experience made her more sympathetic to

the defendant. Neither party requested her removal from the jury and the substitution of an alternate juror. The defendant's contention that the jurors would not be able "to pay proper respect to each other's opinions, and listen with candor to each other's arguments"; see *State* v. *Smith,* 49 Conn. 376, 386 (1881); because of the skeptical view which four of them may have entertained concerning the impartiality of Norcross is not persuasive. The defendant made no request for an examination of any of the jurors concerning bias or premature formation of opinions. Nothing related by the foreman to the court indicated any prejudice against the defendant on the part of any of these jurors. We conclude that the denial of the motion for mistrial was within the reasonable exercise of the trial court's discretion. See *Genuario* v. *Finkler,* 136 Conn. 500, 503, 72 A.2d 57 (1950).

There is nothing in the record to support the claim of the defendant that alternate jurors may have participated in the discussions involving Norcross. Since General Statutes § 51-243 (c)[1] expressly provides that alternate jurors shall not be segregated from the regular panel until the

[1] "[General Statutes] Sec. 51-243. ALTERNATE JURORS IN CIVIL CASES. . . . (c) Alternate jurors shall attend at all times upon trial of the cause. They shall be seated when the case is on trial with or near the jurors constituting the regular panel, with equal opportunity to see and hear all matters adduced in the trial of the case. If, at any time, any juror shall, for any reason, become unable to further perform his duty, the court may excuse him and, if any juror is so excused or dies, the court may order that the alternate juror if there is but one or, if more than one, that one who is designated by lot to be drawn by the clerk shall become a part of the regular panel and the trial shall then proceed as though such juror had been a member of the regular panel from the time when it was begun. A juror who has been selected to serve as an alternate shall not be segregated from the regular panel except when the case is given to the regular panel for deliberation at which time he shall be dismissed from further service on said case."

case is submitted for deliberations, the possibility that the alternates were present during the luncheon conversation which gave rise to this problem cannot be regarded as an outside influence upon the jury violative of their oath and of the statute. General Statutes § 1-25;[2] General Statutes § 51-245.[3] Furthermore, "objections based on contacts between an alternate juror and the original jurors . . . prior to the jury's retirement have usually been unsuccessful, especially in the situation where none of the original jurors is excused and the alternate is not needed to provide a full jury for deliberations." 75 Am. Jur. 2d, Trial § 999, p. 840; see *Ruffin* v. *State,* 50 Del. 83, 93–94, 123 A.2d 461 (1956).

[2] "[General Statutes] Sec. 1-25. FORMS OF OATHS. . . . FOR PETIT JURORS IN CRIMINAL CAUSES. You solemnly swear by the name of the ever-living God, that you will, without respect of persons or favor of any man, well and truly try, and true deliverance make, between the state of Connecticut and the prisoner at the bar, whom you shall have in charge, according to law and the evidence before you; your own counsel, and your fellows', you will duly observe and keep; you will speak nothing, to any one, of the business or matters you have in hand, but among yourselves, nor will you suffer any one to speak to you about the same, but in court; so help you God."

[3] "[General Statutes] Sec. 51-245. DUTY OF JURORS. The jury, after a cause has been committed to them, shall be under the charge of an officer appointed by the court, who shall permit no person to be present with them or to speak to them, when assembled for deliberation; nor shall the jurors converse with any person, not a member of the jury, relative to the cause under consideration, before they have returned their verdict; and when they have agreed upon a verdict they shall return it to the court. If any juror converses with any person except his fellows concerning the cause while it is under consideration, or voluntarily suffers any other person to converse with him, such verdict, on motion, may be set aside, and the court before which such action is pending shall cause such juror to come before it and, if on inquiry it finds him guilty, shall fine him ten dollars; and, if any juror is convicted a second time of such offense, he shall be forever disqualified to sit as a juror in any case. If the officer appointed to attend on the jury, or any juror, is guilty of any disorderly conduct or neglect of duty, or disobeys the orders of the court, the court may fine him not more than ten dollars."

The defendant also claims that the resemblance Norcross saw between her son and the defendant was tantamount to the introduction of extrinsic evidence which fatally tainted the jury. The state argues that the defendant should be precluded from raising this claim since he knew of Norcross' son's affliction from the voir dire and, nevertheless, chose not to challenge her for cause. He did not, however, know that she would discuss the subject with other jurors in contravention of the judge's instruction not to discuss the case with anyone. It is reasonable to presume that jurors will adhere to the court's instructions. See *Gorham* v. *Farmington Motor Inn, Inc.,* 159 Conn. 576, 581, 271 A.2d 94 (1970). The defendant cannot be said to have waived his objection and we, therefore, address the issue.

Consideration of extrinsic evidence is jury misconduct and has been found to be sufficient to violate the constitutional right to trial by an impartial jury. See, e.g., *United States* v. *Winkle,* 587 F.2d 705, 714 (5th Cir. 1979). "[A]ny 'prejudicial factual intrusion' denies a defendant his rights to trial by an impartial jury and to challenge the facts adverse to him that are made known to the jury. *United States* v. *Howard,* 506 F.2d 865 (5th Cir. 1975)." *United States* v. *Winkle,* supra, 714. The modern jury's verdict must be based solely upon the evidence developed at the trial. *Irvin* v. *Dowd,* 366 U.S. 717, 722, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961); *United States* v. *Howard,* supra, 866; see General Statutes § 1-25. "It is of course 'the very stuff of the jury system' for the jury to exercise its collective wisdom and experience in dissecting the evidence properly before it; and in this process the cross-pollination of opinion, viewpoint, and insight into human affairs is one of the jury's

strengths. But this does not include communication from one juror to another of objective extrinsic facts regarding the criminal defendant or his alleged crimes." *United States* v. *Howard,* supra, 867.

Norcross' comment simply cannot be characterized as an "objective extrinsic fact." It is to be distinguished from the situation in which one juror has told the others of a past crime committed by the defendant; see *United States* v. *Howard,* supra, 866; *State* v. *Freeman,* 5 Conn. 348 (1824) ; or that an alleged accomplice has confessed. See *United States* v. *Winkle,* supra, 713. Mere expression of opinion, as opposed to positive expression of facts, does not warrant a mistrial. The testimony of the psychiatrists reminded Norcross of her son's problems and she told the others about his symptoms, characterizing them as "schizophrenic." The court's denial of the mistrial motion, based on its view that her statements were "feelings . . . caused by her personal experience with her son," not expressions of personal knowledge, was within its sound discretion.

The last aspect of this issue is whether the fact that the juror and the judge met privately in the absence of counsel in and of itself necessitated the granting of a mistrial. "It has long been the law of this state that jurors shall not converse with any person, not a member of the jury, regarding the cause under consideration . . . ." *Aillon* v. *State,* 168 Conn. 541, 545–46, 363 A.2d 49 (1975) (hereinafter *Aillon I*) ; *Tomlinson* v. *Derby,* 41 Conn. 268, 274 (1874) ; *Bennett* v. *Howard,* 3 Day 219, 223 (Conn. 1808). Ex parte conversations between judge and juror are constitutionally prohibited

because the judge's statements may affect the jury's impartiality. *Aillon I,* supra. Even when communication occurs between the judge and a juror after deliberations have begun, however, prejudice must be found to warrant a mistrial. *Aillon v. State,* 173 Conn. 334, 338, 377 A.2d 1087 (1977) (hereinafter *Aillon II*). In a criminal case the burden is on the state to show that the communication was harmless beyond a reasonable doubt. Id., 339; see *Chapman v. California,* 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

We conclude that the absence of prejudice was shown in this case "by the full and immediate disclosure in open court of what had transpired"; *State v. Hackett,* 182 Conn. 511, 524, 438 A.2d 726 (1980); and by the undisputed record that the judge's only communication to the juror was to thank him for telling of the jurors' concern.[4] On the basis of the record before us we have no reasonable doubt that the communication was harmless. Cf. *Aillon II,* supra (holding that the trial court's conclusion of harmlessness was not supported by the record since there was no credible evidence as to what was said in the improper private conversation). For the foregoing reasons, the defendant's claim that his motion for mistrial was erroneously denied is without merit.

---

[4] At no time did counsel for either party dispute the statement of the trial judge that he had simply thanked the foreman for giving him the information concerning Norcross. No request was made for any evidentiary hearing upon what had transpired in chambers after the court had disclosed the communication with the juror to counsel. Our decision today would not preclude a different result if the facts developed on a petition for a new trial demonstrated that the conversation between the judge and juror was different from what appears in the present record. See *Aillon v. State,* 173 Conn. 334, 339-40, 377 A.2d 1087 (1977).

## II

The defendant claims that the testimony of Laurna Bell, elicited by the state in its case in chief, should not have been admitted because it consisted of (1) prior misconduct evidence attacking the defendant's character before it was put in issue and (2) premature evidence relating to the defendant's sanity. The state counters that Bell's testimony was relevant to the defendant's sanity and that its admission, if error, was harmless. We agree with these contentions of the state.

The trial court, which reviewed Bell's statement to the police and heard argument before ruling, concluded that her testimony was relevant to the defendant's mental functioning just before the sexual assault and that it should be admitted because insanity had been raised as a defense.[5] She testified that the defendant made advances toward her only in the absence of the victim's father, a fact signifying in some measure his appreciation of the wrongfulness of his subsequent conduct and his ability to control his actions. Virtually conceding the general relevance of her testimony, the defendant claims the court should have excluded it as more prejudicial than probative. We do not think the trial court abused its broad discretion in the difficult task of balancing the prejudicial and probative

---

[5] The court stated that the evidence would have been excluded if the defense of insanity was not going to be presented. The defendant had previously given notice of this defense. Practice Book § 758. The court rejected a claim of the state that the evidence was admissible to show that the defendant had a strong interest in a particular form of sexual activity a short time before he engaged in a crime involving such conduct. We need not consider the propriety of this ruling in view of the result reached.

nature of the proffered testimony. See *Batick* v. *Seymour,* 186 Conn. 632, 443 A.2d 471 (1982); 2 Wigmore, Evidence § 228.

Only belatedly on appeal does the defendant claim that Bell's testimony was premature upon the issue of insanity because the defendant had not yet presented any evidence on that subject. The defendant cannot rely upon a ground for the exclusion of evidence not distinctly raised in the trial court. Practice Book § 288; see *State* v. *Brice,* 186 Conn. 449, 457, 442 A.2d 906 (1982); *State* v. *Shaw,* 186 Conn. 45, 48, 438 A.2d 872 (1982). Moreover, the defendant had indicated by his notice filed pursuant to Practice Book § 758, and by his questioning of the jurors on voir dire, that he intended to rely upon the defense of insanity. When the trial court indicated that its ruling was based upon the fact that "the defense is going to be made," the defendant said nothing to the contrary. The ruling does not fall within the exceptional circumstances category reserved for errors of constitutional magnitude where we have excused the failure to raise a claim in the trial court. See *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). At most it involved the discretionary authority of the trial court to control the order of presentation of testimony. See Practice Book § 283; *Barber* v. *Baldwin,* 135 Conn. 558, 564, 67 A.2d 1 (1949). In any event, the ruling, even if technically erroneous, became harmless once the defendant did present his insanity defense, since Bell's testimony would have been admissible in rebuttal. *State* v. *Jenkins,* 158 Conn. 149, 158, 256 A.2d 223 (1969).

## III

The defendant properly preserved his next claim, that the charge on insanity was confusing and erroneous. The objectionable portion of the charge consists of one sentence using the outdated terminology of the M'Naghten rule[6] in elaborating on the statutory definition of insanity[7] previously given. That this language, "a mind . . . incapable of distinguishing right from wrong," is not the applicable standard is undisputed. It is not precisely equivalent to a lack of "substantial capacity to appreciate the wrongfulness of . . . conduct"; *State* v. *Toste,* 178 Conn. 626, 632, 424 A.2d 293 (1979); and it omits entirely the alternative basis for finding insanity, lack of "substantial capacity . . . to conform . . . conduct to the requirements of law."

---

[6] The M'Naghten rule, whose name is derived from *M'Naghten's Case,* 8 Eng. Rep. 718 (1843), was part of the common law in this state prior to 1967. In that year the General Assembly adopted the Model Penal Code definition of insanity, now General Statutes § 53a-13, as a statutory standard. The M'Naghten rule called for complete impairment of ability to know or control. General Statutes § 53a-13 provides in relevant part that a "lack of substantial capacity to appreciate the wrongfulness of his conduct" will suffice as a defense. See generally *State* v. *Toste,* 178 Conn. 626, 632, 424 A.2d 293 (1979).

[7] "[General Statutes] Sec. 53a-13. INSANITY AS DEFENSE. In any prosecution for an offense, it shall be a defense that the defendant, at the time of the proscribed conduct, as a result of mental disease or defect lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. It shall not be a defense under this section if such mental disease or defect was proximately caused by the voluntary ingestion, inhalation or injection of intoxicating liquor or any drug or substance, or any combination thereof, unless such drug was prescribed for the defendant by a licensed practitioner, as defined in section 20-184a, and was used in accordance with the directions of such prescription. As used in this section, the terms mental disease or defect do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

General Statutes § 53a-13. The court, however, did initially read the correct insanity definition from the statute and three sentences after the M'Naghten language stated, in accordance with the statute, "that the accused must lack substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." After the defendant had excepted to the inclusion of the M'Naghten phraseology in the charge, the trial court reconvened the jury, acknowledged that it had "used a word or two wrong" in giving the statutory definition of insanity, and then read the definition from the statute. The defendant at that point said, "[c]orrect." Later, during the course of deliberations, the jury sent a note requesting "a copy of the definition of legal insanity." The court complied with this request and no further exception was taken by the defendant.

We conclude that the deviation from the statutory definition of insanity, which the defendant properly called to the trial court's attention by excepting to that portion of the charge, was adequately cured by the additional charge given and by the submission of a copy of the statute to the jury in accordance with their request. "The supplemental charge was correct and articulate, fully covering the issues." *State* v. *Reed,* 174 Conn. 287, 308, 386 A.2d 243 (1978). It satisfactorily cleared up any confusion which may have been generated by the erroneous inclusion of the M'Naghten language, as indicated by the absence of any request by the defendant for further clarification after the additional instructions were given. *State* v. *Spates,* 176 Conn. 227, 237, 405 A.2d 656 (1978); cf. *State* v. *Toste,* supra, 630–33. Under all the circumstances there

is no reasonable possibility that the jury was misled as to the proper standard for determining insanity. See *State* v. *Rose,* 169 Conn. 683, 687–88, 363 A.2d 1077 (1975).

## IV

For the first time the defendant claims error in the admission of testimony that the defendant had been adjudicated competent to stand trial. He seeks review of this ruling, despite his failure to raise the issue below, under the doctrine of *State* v. *Evans,* supra, on the ground that the evidence so prejudiced him before the jury that he was deprived of a fair trial.

It was the defendant who elicited the fact that the psychiatrist, who testified in support of his insanity defense, had examined him for the first time in April, 1977, pursuant to an appointment by the court, and who inquired about the importance of the interview in examining someone "for purposes of competency" and whether such an interview would be considered a "diagnostic interview." On cross-examination the state proceeded without objection to bring out the fact that another psychiatrist had also examined the defendant in April and found that he was competent to stand trial and that the court had relied upon that opinion in finding the defendant competent. The witness also stated on cross-examination that competency to stand trial and the presence of mental illness were not necessarily related. The state also presented without objection the testimony of the other psychiatrist who had examined the defendant for competency that he had found him competent at the time of his examination in May.

The defendant claims that the introduction of the testimony about the results of the competency exam-

ination violated his right to a fair trial and is, therefore, reviewable despite the absence of any objection or exception under the special circumstances exception for certain constitutional errors created by *State* v. *Evans,* supra. He relies upon several cases decided by the federal courts where testimony concerning a finding of competency to stand trial was deemed to constitute plain error in view of a provision of a federal competency examination statute; 18 U.S.C. § 4244; expressly prohibiting the disclosure of such a finding to the jury. *United States* v. *Fortune,* 513 F.2d 883 (5th Cir. 1975), reh. denied, 518 F.2d 1407, cert. denied, 423 U.S. 1020, 96 S. Ct. 459, 46 L. Ed. 2d 393 (1975); *United States* v. *Harper,* 450 F.2d 1032, 1035 (5th Cir. 1971); see also *United States* v. *Davis,* 496 F.2d 1026 (5th Cir.), reh. denied, 503 F.2d 568 (1974). Our statutes contain no such provision which might justify our consideration of the subject as plain error on the ground that an applicable statute had been overlooked. Practice Book § 3063; see *State* v. *Burke,* 182 Conn. 330, 438 A.2d 93 (1980); *Stoni* v. *Wasicki,* 179 Conn. 372, 377, 426 A.2d 774 (1979); *Campbell* v. *Rockefeller,* 134 Conn. 585, 588, 59 A.2d 524 (1948); *Schmidt* v. *Manchester,* 92 Conn. 551, 555, 103 A. 654 (1918). We are not convinced that the admission of such testimony under the circumstances of this case is an error of constitutional dimensions which would be cognizable under the standards established by *State* v. *Evans,* supra. We, therefore, decline to review this ruling further.

## V

Another error claimed but not properly preserved by any exception focuses on the portion of the charge relating to the credibility to be accorded to

the testimony of the psychiatrists. The defendant asserts that he was prejudiced by the court's statement that his interest in the outcome should be considered in evaluating the truth of the statements he made to the psychiatrists during the interviews and that their opinions to the extent that they relied upon his statements should be weighed accordingly. In no way can this issue be considered to fall within the "exceptional circumstances" doctrine. *State* v. *Evans,* supra; *State* v. *Taborsky,* 147 Conn. 194, 214, 158 A.2d 239 (1960), rev'd on other grounds sub nom. *Culombe* v. *Connecticut,* 367 U.S. 568, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961). Accordingly, we need not evaluate its merit.

## VI

The defendant claims that the imposition of sentences on both the sexual assault and risk of injury counts violated his federal constitutional right not to "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., art. V. This protection was made applicable to the states by the fourteenth amendment. *Benton* v. *Maryland,* 395 U.S. 784, 787, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). This claim too was first raised in this court, but since it involves a question of a fundamental right wholly reviewable on the record we will consider it. See *State* v. *Evans,* supra, 70.

It is established that double jeopardy attaches in situations where multiple punishments are imposed for the same offense in a single trial. *Whalen* v. *United States,* 445 U.S. 684, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980); *Brown* v. *Ohio,* 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); *State* v. *Amaral,* 179 Conn. 239, 242, 425 A.2d 1293 (1979). "The applicable rule is that where the same act or

transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932); *State* v. *Goldson*, 178 Conn. 422, 424, 423 A.2d 114 (1979). Here the state concedes[8] that the same act or transaction underlay both of the statutory offenses charged. The analysis then becomes one of deciding whether, restricting our examination to the statutes, the information and the bill of particulars; *State* v. *Truppi*, 182 Conn. 449, 468, 438 A.2d 713 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981); *State* v. *Amaral*, supra, 243; the proof of a violation of one statute necessarily requires proof of a violation of the other. *State* v. *Goldson*, supra, 426; see *Brown* v. *Ohio*, supra, 168. The process precludes examination of the evidence. *Illinois* v. *Vitale*, 447 U.S. 410, 416, 100 S. Ct. 2260, 65 L. Ed.

---

[8] During oral argument counsel for the state seemed to waver as to this point notwithstanding the statement in the state's brief that "[t]here is no dispute in this case that the charges stated in the information clearly invoke the same act or transaction." Realizing that it had erroneously based the entire double jeopardy section of its brief upon the original information rather than the substituted information, the state withdrew the inapplicable portions at oral argument and orally presented a counter-argument to the double jeopardy claim using the appropriate statutes. Counsel did hypothesize, since there was no bill of particulars, that the risk of injury charge might have been based on acts other than the actual intercourse, such as picking up the victim or removing her underpants. We think that, since the statement in the brief conceding the single act was not dependent upon consideration of the particular sexual assault violation charged, it still represents the state's position. The result we reach, finding no double jeopardy even if only a single act was involved, makes it unnecessary to discuss the secondary position suggested by the state in its oral argument.

2d 228 (1980); *Blockburger* v. *United States,* supra; *State* v. *Truppi,* supra; *State* v. *Amaral,* supra; *State* v. *Goldson,* supra. If the elements of one offense as defined by the statute include the elements of a lesser offense; or if one offense is merely nominally distinct from the other; then double jeopardy attaches. *State* v. *Goldson,* supra.

The defendant concedes and the state relies upon the fact that risk of injury and sexual assault in the second degree do not stand in the relation of greater to lesser included offenses. Each requires proof of an element not required by the other. In order to convict under General Statutes § 53-21,[9] the risk of injury statute, as charged, the state must prove (1) an act (2) likely to impair the morals or health (3) of a child under the age of sixteen. See *State* v. *Dennis,* 150 Conn. 245, 250, 188 A.2d 65 (1963). The second element, likelihood of impairment of the morals or health of a child, is not a necessary corollary of sexual intercourse. Conversely, a conviction of sexual assault in the second degree under General Statutes § 53a-71 (a) (1)[10] requires proof

[9] "[General Statutes] Sec. 53-21. INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both." The second count of the substituted information charged that the defendant "did commit acts likely to impair the health and morals of a child under the age of sixteen (16) years . . . ," relying upon the last statutory alternative.

[10] "[General Statutes] Sec. 53a-71. SEXUAL ASSAULT IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under fifteen years of age . . . ."

of intercourse, which is only one of a multitude of acts that would suffice to prove risk of injury.

Therefore the statutory violations charged, risk of injury and sexual assault in the second degree, are not the same offense for double jeopardy purposes.

There is no error.

In this opinion HEALEY and PARSKEY, Js., concurred.

SPEZIALE, C. J. (dissenting). I strongly disagree with the majority opinion because there is not the least bit of evidence—none whatsoever—in the record before us to allow the majority to conclude that the state has shown beyond a reasonable doubt that the improper ex parte communication between the trial judge and a juror was harmless. My concern is not with the content of the communication as described by the trial judge in his statement on the record, rather my concern is with the total lack of any evidence on the record as to the communication between judge and juror. In the absence of such evidence, I do not believe that the state can show the communication to be harmless beyond a reasonable doubt. I would remand this case to the trial court for an evidentiary proceeding at which the state would have the opportunity to develop the evidence required to meet its burden.

In finding error on this point, the majority correctly indicates that an ex parte communication between a judge and juror is improper and that, because of the constitutional implications of such communication in a criminal trial, the burden is on the state to show beyond a reasonable doubt that the communication was harmless. See *Aillon* v.

*State,* 173 Conn. 334, 338, 377 A.2d 1087 (1977) (*Aillon II*); *Aillon* v. *State,* 168 Conn. 541, 545–47, 363 A.2d 49 (1975) (*Aillon I*). In this case the majority finds this burden as having been met by the judge's statement on the record and by the defendant's failure to dispute this statement or to move for an evidentiary proceeding. This conclusion, however, is not consistent with the law as established in *Aillon I,* supra, and *Aillon II,* supra.

When an improper ex parte communication between a judge and juror occurs, it is *presumed,* until rebutted by the state, that the defendant has been prejudiced. *Aillon I,* supra, 548. In this case "the record contains no . . . *evidence* whatsoever as to what was said by the judge and the juror during that improper private conversation." (Emphasis added.) *Aillon II,* supra, 339. The judge's statement on the record, of course, being unsworn and not subject to cross-examination is not evidence. The judge and the juror were the only ones who could testify as to what was said; however, neither the judge nor the juror testified. In the absence of such evidence, it cannot be reasonably and logically concluded that the state rebutted beyond a reasonable doubt the presumption of prejudice. Id., 340. Because of the presumption of prejudice it was incumbent upon the state, not the defendant, to seek an evidentiary hearing at which evidence could be developed to rebut the presumption. *Aillon II,* supra, 335, 339; *Aillon I,* supra, 548.

In the interests of fairness and justice, I would remand this case for further proceedings at which time the judge and juror in question could testify and, thereby, give the state an opportunity to develop a record which would be sufficient to allow

us to determine properly whether the error in this case was harmless beyond a reasonable doubt. Because the present record is totally devoid of even an iota of evidence to support the majority's reaching such a conclusion at this time, I must dissent.

In this opinion PETERS, J., concurred.